UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DANNY RAY MEEKS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 3:12-0545 |
| | ) | Judge Trauger/Bryant |
| DERRICK D. SCHOFIELD, *et al.*, | ) | **Jury Demand** |
| | ) | |
| Defendants | ) | |

**TO:  THE HONORABLE ALETA A. TRAUGER**

### REPORT AND RECOMMENDATION

Defendants Dennis Davis, Mike Christensen, Julia Campbell, Jewel Steele and the Tennessee Department of Corrections ("TDOC") have filed their motion for summary judgment (Docket Entry No. 284). Plaintiff Meeks has responded in opposition (Docket Entry Nos. 314, 315 and 316). For the reasons stated below, the undersigned Magistrate Judge finds that Defendants' motion for summary judgment should be GRANTED and the complaint, as amended, dismissed.

### STATEMENT OF THE CASE

Plaintiff Danny Ray Meeks, a prisoner proceeding *pro se* and *in forma pauperis*, has filed this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*, and Title VII of the Civil Rights Act of 1964. Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages. Named as Defendants are Derrick Schofield,

Commissioner of TDOC, Mike Christensen, the ADA officer at the Deberry Special Needs Facility ("DSNF") in Nashville, Tennessee, and Dennis Davis, identified as a Grievance Board Chairman at DSNF (Docket Entry No. 1).

Upon initial review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court found that Plaintiff's claim that Defendant Christensen had bathroom doors in Plaintiff's housing unit removed in retaliation for being required to produce information in response to discovery served by Plaintiff in an earlier lawsuit stated a cognizable claim under Section 1983(Docket Entry No. 5 at 3). The Court also found that the complaint stated a potentially viable claim against Defendant Davis under 42 U.S.C. § 1983 for violation of Plaintiff's right to privacy, as a result of Davis's alleged disclosure of the Plaintiff's private medical information to other inmates. The Court also allowed Plaintiff's claims under the ADA and the Rehabilitation Act to survive against Defendant TDOC, but dismissed claims under these two statutes against the individual Defendants upon a finding that, as a matter of law, neither the ADA nor the Rehabilitation Act authorized suit against public employees or supervisors in their individual capacities (Docket Entry No. 5 at 4). All other claims in the complaint were dismissed for failure to state a claim (*Id*. at 6).

Plaintiff later filed an amended complaint supplementing his claims, including new claims against Defendants Davis, Julia Campbell and Warden Jewel Steele (Docket Entry No. 28).

2

Defendants have filed their amended answer denying liability and asserting affirmative defenses (Docket Entry No. 175). Thereafter, Defendants filed their motion for summary judgment.

**STANDARD OF REVIEW**

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving

3

party's case. *Celotex*, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

For sake of organization, the undersigned will discuss Plaintiff's claims against the moving Defendants separately.

<u>Defendant Mike Christensen</u>. Plaintiff Meeks claims that Defendant Christensen, the ADA Coordinator at DSNF, was aware of Plaintiff's paruresis,[1] and that Christensen retaliated against Plaintiff by having bathroom doors removed from housing Unit 4A where Plaintiff was housed. Plaintiff alleges that this act by Christensen was in retaliation for his being required to produce certain information in response to discovery requests by Plaintiff in an earlier lawsuit (Docket Entry No. 1 at 5-6).

In support of his motion for summary judgment, Defendant Christensen has filed his own affidavit and the affidavit of Jennie Jobe, who was warden at DSNF when the bathroom doors in Unit 4 were

---

[1]Paruresis, sometimes called "shy bladder syndrome," is a phobia that involves fear and avoidance in using public restrooms, and may make it impossible for one to urinate in the presence of others, such as in a public restroom.

4

removed (Docket Entry Nos. 285-4 and -11). In his affidavit, Defendant Christensen testifies that he did not have the bathroom doors removed from Unit 4, that he was not personally involved in the decision to remove the bathroom doors, that he lacked the authority to have the bathroom doors removed, and that he had no authority, direction, or control over the decision to remove the bathroom doors. In her affidavit, Ms. Jobe testifies that Defendant Christensen did not recommend removal of the bathroom doors in Unit 4, and that Christensen lacked the authority to have the bathroom doors removed because only the warden of the institution had such authority. Jobe further testified that she ordered the removal of the bathroom doors upon the recommendation of unit manager Abingambe because inmates were smoking in the bathrooms.

In his response in opposition, Plaintiff Meeks fails to offer any evidence to demonstrate the existence of a genuine issue of material fact in support of his claim that Defendant Christensen had the bathroom doors in Unit 4 removed (Docket Entry 314 at 2-7). Instead, Plaintiff seems to argue that then-Warden Jennie Jobe "was motivated to punish the Plaintiff for having exercised his First Amendment rights of protected speech activities in seeking relief from the unlawful ADA violations by contacting Commissioner Schofield" (Docket Entry 314 at 6).

The undersigned Magistrate Judge finds from the admissible evidence in the record there is no genuine issue as to

5

any material fact, that there is no evidence supporting the claim that Defendant Christensen had the bathroom doors removed, and that Christensen is entitled to judgment as a matter of law.

<u>Defendant Dennis Davis</u>. Plaintiff Meeks alleges that on May 17, 2011, Defendant Dennis Davis, acting in the capacity of Grievance Board Chairman, wrongfully disclosed confidential medical information concerning Meeks – his paruresis diagnosis – to other inmates in Meeks's housing unit (Docket Entry No. 1 at 7). The Court has previously found that this allegation states a potentially viable claim against Davis under 42 U.S.C. § 1983 for violation of Meeks's right to privacy (Docket Entry No. 5 at 3). The Sixth Circuit has found that, as a matter of law, inmates have a "Fourteenth Amendment privacy interest in guarding against disclosure of sensitive medical information from other inmates subject to legitimate penological interests." *Moore v. Prevo*, 379 Fed. Appx. 425, 428, 2010 WL 1849208 (6th Cir. May 6, 2010) (unpublished).

In support of his motion for summary judgment, Defendant Davis has filed the affidavits of two witnesses, Debra Moody and Natasha Holt, both of whom testify that they were present at the Grievance Board hearing on May 17, 2011 (Docket Entry Nos. 285-8 and -9). Both Moody and Holt testify that Defendant Davis did not disclose any confidential medical information concerning Meeks at this hearing, but that Meeks himself freely disclosed his paruresis condition, presumably to bolster his argument before the Grievance

6

Board that removal of the bathroom doors in Unit 4 was especially harmful to him. In addition, Defendant Davis has filed the affidavit of Ty Parker, the Grievance Chairman at DSNF. Parker testifies by affidavit that Meeks has never filed a grievance at DSNF grieving that Defendant Davis improperly disclosed Meeks's medical information to other inmates at DSNF (Docket Entry No. 285-10). Parker's testimony is undisputed in the record.

Assuming for the sake of argument that a genuine issue of material fact exists concerning whether Defendant Davis wrongfully disclosed Meeks's confidential medical information, it appears undisputed that Meeks never filed an institutional grievance concerning this claim or otherwise exhausted his administrative remedies before filing this action. As such, Meeks's unexhausted privacy claim against Davis is barred by the provisions of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), and must be dismissed. *Jones v. Bock,* 549 U.S. 199, 220 (2007).

TDOC. Upon the initial review of the complaint, the Court found that the Plaintiff's claims against TDOC under the Rehabilitation Act and Title II of the ADA should be allowed to proceed (Docket Entry No. 5 at 5). During its review, the Court found that the "primary focus" of Meeks's complaint is the removal of the bathroom doors in his housing unit and the prison's failure to provide him a reasonable accommodation for his paruresis after removal of the doors. (*Id*. at 4). Meeks also insists that his

7

subsequent transfer from Unit 4 to Unit 15 amounted to retaliation for his assertion of his rights under the ADA.

Title II of the ADA prohibits a public entity from discriminating against disabled individuals and states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" is defined, in relevant part, as "any State or local government" and as "any department, agency, . . . or other instrumentality of a State or local government." 42 U.S.C. § 12131(1)(A)&(B).

With respect to retaliation, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). Since both the Rehabilitation Act and ADA prohibit discrimination based upon an

8

individual's disability, claims under both statutes can be analyzed together. *Thompson v. Williamson Co.*, 219 F.3d 555, 557 (6th Cir. 2000).

In support of their motion for summary judgment, Defendants have filed the affidavit of Jennie Jobe, who was the warden at DSNF when the bathroom doors of Unit 4 were removed (Docket Entry No. 185-11). Ms. Jobe testifies that, as warden, she ordered removal of the bathroom doors in Units 3 and 4 based upon reports that inmates had begun smoking in those bathrooms. She further testifies that after the bathroom doors were removed, Meeks began filing grievances claiming that the removal of the doors violated his rights, and he began writing letters to the Commissioner of Corrections, Derrick Schofield. Ms. Jobe testifies that in response to "numerous complaints" from Meeks regarding the bathroom doors and his paruresis, she decided to move Meeks from Unit 4 to Unit 15A "where he would have a private bathroom in his cell to accommodate his paruresis." (Docket Entry No. 185-11 at 3). Finally, Ms. Jobe testifies that while housed in the medical unit, Unit 15A, Meeks was allowed to continue his prison job, to have access to the library, and to "participate in the same activities he was allowed to participate in while housed in general population in Unit 4." (*Id.*).

In response, Plaintiff Meeks has filed six affidavits signed by fellow inmates (Docket Entry Nos. 294, 295, 296, 297, 298, and 299). These affidavits, which are substantially identical,

9

state in contradiction to Ms. Jobe's affidavit that inmates housed in the medical unit, Unit 15A, were not allowed to participate in the inmate field day program on October 12, 2011. Although these affidavits also state generally that inmates housed in Unit 15A were regularly excluded from other programs available to inmates in the general population at DSNF, the affidavits fail to identify any other specific program from which inmates housed in Unit 15A were excluded. Significantly, Meeks makes no claim in this action that he would have participated in the inmate field day program if permitted to do so.

From the undisputed evidence in this case, the undersigned Magistrate Judge finds that Warden Jobe ordered the bathroom doors in Unit 4 at DSNF removed for a legitimate penological purpose – to address the problem of inmates smoking in these bathrooms. The undersigned further finds that after Plaintiff Meeks complained about the removal of the bathroom doors, Warden Jobe transferred Meeks to Unit 15A, where he would have a private bathroom in his cell, in a good-faith attempt to accommodate Meeks's paruresis. Although Meeks clearly found this move to Unit 15A objectionable, he has wholly failed to identify any condition of his confinement in Unit 15A that was materially worse than the conditions in Unit 4. Thus, applying the "bounds of reasonableness" standard, *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008), the undersigned finds that the action of TDOC in removing the bathroom doors in Unit 4 at DSNF and thereafter transferring Meeks

to Unit 15A, where he had access to a private bathroom in his cell, did not constitute a violation of the ADA or RA[2], and that upon the evidence in this record no reasonable jury could find otherwise.

<u>Retaliation Claims Against Defendants Davis, Campbell and Steele</u>. In his amended complaint (Docket Entry No. 28), Meeks makes certain supplemental claims.

He alleges that on November 3, 2011, Defendant Julia Campbell, a unit manager at DSNF, searched Plaintiff's cell and seized certain legal materials allegedly belonging to Plaintiff and to other inmates.

Meeks alleges that on June 15, 2012, Defendant Davis conducted a search of the computer at Meeks's assigned work station to determine whether Meeks had been doing any type of legal work on the state computer.

On June 20, 2012, Defendant Campbell directed Meeks to leave the law library because he was not authorized to be there, apparently because she was unaware that his "Release for Success" class had been canceled that day.

On June 27, 2012, and on July 10, 2012, Defendant Davis and others conducted a search of Meeks's assigned work space, including his state computer.

---

[2] Meeks in his motion papers insists that the prison was legally obligated to engage with him in an "informal interactive process hearing" to collectively decide upon a suitable accommodation for Meeks's disability, citing 29 C.F.R § 1630.9 (Docket Entry No. 314 at 4). This argument is misplaced, because the subject regulation is promulgated under chapter I of the ADA governing the employment relationship. Meeks's ADA claim arises under chapter II governing public services.

Meeks in his amended complaint claims that the foregoing incidents are "strictly the result of interference, coercion, and retaliation in an attempt to impede Plaintiff's right of access to the court under the First and Fourteenth Amendment of the United States Constitution" (Docket Entry No. 28 at 12).

Meeks asserts that the foregoing action by Defendants amounts to retaliation for his exercise of his constitutional rights, here, access to the court. It is well established that prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343 (1996); *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999).

A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements 1 and 2 – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X*, 175 F.3d at 394.

It is undisputed that at all times pertinent to the present complaint Meeks was engaged in an earlier lawsuit filed against TDOC and others based upon the ADA and 42 U.S.C. § 1983 (*Danny Ray Meeks v. Tennessee Department of Corrections*, et al., No. 1:07-0013). Thus, Meeks was engaged in protected activities in satisfaction of the first element of a retaliation claim.

The second element of a plaintiff's retaliation claim is a showing that an adverse action was taken against him. Meeks alleges various actions taken against him in his complaint. It is not necessarily true, however, that every action, no matter how small, is constitutionally cognizable. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."). To determine whether actions of lesser severity merit being deemed "adverse" for purposes of a retaliation claim, the Sixth Circuit has adopted the standard defining an adverse action as one that would deter a person of ordinary firmness from the exercise of the right at stake. *Thaddeus-X*, 175 F.3d at 396.

Here, Meeks alleges that Defendant Davis on three occasions conducted a search of the computer at Meeks's assigned work station, presumably to determine whether Meeks at been doing any type of legal work on the state computer. Meeks fails to allege that Defendant Davis found any contraband during these searches or that these searches resulted in any adverse consequences to Meeks. Therefore, the undersigned Magistrate Judge finds that these searches of Meeks's assigned work station, including the state computer located there, were *de minimis*, and were not sufficient to deter a person of ordinary firmness from accessing the courts. Indeed, there is no evidence that Meeks has been deterred in any respect in the prosecution of his lawsuits.

Similarly, Defendant Campbell's direction to Meeks on June 20, 2012, to leave the law library because he was not authorized to be there is likewise is a *de minimis* imposition which is insufficient to implicate constitutional concerns. This is especially true in light of the undisputed evidence from Defendant Campbell's affidavit, in which she testified that on June 20, 2012, she did not believe that Meeks had permission to be in the library, but that she found out on the following day that, in fact, Meeks did have such permission (Docket Entry No. 285-6 at 2-3).

Meeks further complains about a search of his cell by Defendant Campbell on November 3, 2011, which revealed that Meeks had legal materials belonging to other inmates. This discovery resulted in a disciplinary charge against Meeks for violating prison policy regarding inmate legal helpers. Meeks was convicted of this disciplinary offense on November 9, 2011, and his disciplinary conviction was affirmed by the Commissioner of Corrections on December 13, 2011 (Docket Entry No. 285-6).

The Sixth Circuit has held that an inmate does not have an independent right to help other prisoners with their legal claims. *Thaddeus-X*, 175 F.3d at 395 (citing *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993)). Moreover, a jailhouse lawyer's right to assist another prisoner is wholly derivative of that prisoner's right of access to the court. Prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court. *Id*. Among

unauthenticated documents filed by Meeks in this record is a memorandum dated May 22, 2011, signed by Warden Jennie L. Jobe granting Meeks permission to assist inmate David Cosgriff with legal work (Docket Entry No. 315 at 15). Also in the record is an unauthenicated memorandum from Warden Jobe dated June 7, 2011, which states in part that such legal assistance is limited to one inmate at a time, and that additional approval must be obtained before working with additional inmates (Docket Entry No. 315 at 16). Thus, although unauthenicated documents in the record suggest that Meeks had earlier been approved to serve as inmate legal helper to a single inmate, the record indicates that on November 3, 2011, Meeks was not an approved legal helper and was not permitted by prison policies to possess legal documents of multiple other inmates (Docket Entry No. 285-6 at 2).

If a prisoner violates a legitimate prison regulation, he is not engaged in "protected conduct" and cannot proceed beyond the first element of a retaliation claim. *Thaddeus-X*, 175 F.3d at 395. For these reasons, the undersigned Magistrate Judge finds as a matter of law that the search of Meeks's cell on November 3, 3011, and the resulting disciplinary charge of which he was convicted, cannot form the basis of a retaliation claim.

<u>Warden Jewel Steele</u>. In his amended complaint, Meeks alleges that Defendant Steele was the warden at DSNF and that she "has listened to Defendant/FSO/ADA Officer Mr. Mike Christensen, as evidenced by her actions toward the Plaintiff and her written

15

responses and refusal to respond to the Plaintiff's request for a reasonable accommodation interactive process hearing." (Docket Entry No. 28 at 22). Defendant Steele has filed her affidavit in which she testifies that she was appointed to the position of warden at DSNF on September 1, 2011 (Docket Entry No. 285-7). She further testifies that after becoming warden she learned that the previous warden, Jennie Jobe, had ordered bathroom doors removed from Units 3 and 4 to prevent the use of contraband in those units. Defendant Steele testified that she ordered the bathroom doors replaced on the bathrooms in Units 3 and 4. She further testified that she had no personal involvement in the allegations contained in the Meeks complaint beyond responding to Meeks's appeal of his grievances regarding removal of the bathroom doors and his disciplinary convictions, which came to her in her administrative capacity as a warden (Docket Entry No. 285-7 at 2).

A plaintiff pursuing a section 1983 claim must establish that a defendant was personally involved in the alleged unconstitutional activities set out in the complaint. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Liability under section 1983 must be based upon active unconstitutional behavior and cannot be premised upon a mere failure to act. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). In order to impose liability under section 1983, a plaintiff must show that each government official defendant, through the official's own individual actions, engaged

in active unconstitutional behavior. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Considering the foregoing undisputed evidence, and the above legal standards, the undersigned Magistrate Judge finds that Plaintiff has failed to demonstrate any genuine issue of material fact supporting the liability of Defendant Steele, and that Defendant Steele, therefore, is entitled to judgment as a matter of law.

In summary, for the reasons stated above, the undersigned Magistrate Judge finds that there is no genuine dispute as to any material fact and that Defendants are entitled to judgement as a matter of law. Therefore, Defendants' motion for summary judgment should be GRANTED, and the complaint, as amended, DISMISSED.

**RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge recommends that Defendants' motion for summary judgment be GRANTED and the complaint DISMISSED with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further

appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 6th day of March, 2014.

/s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge